IN THE SUPERIOR COURT



**FILED**

May 26, 2020

**TAMARA CHARLES**
**CLERK OF THE COURT**

**SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |  |
|---|---|---|
| MICHAEL KITNURSE, <br><br> PLAINTIFF, <br><br> V. <br><br> MARSHALL AND STERLING; AND CERTAIN UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO POLICY NUMBER CPS200601660, <br><br> DEFENDANTS. | | SX-14-CV-361 <br> Cite as: 2020 V.I. Super 060 |

*FOR PUBLICATION*

**Appearances:**

**Lee J. Rohn, Esq.**
Christiansted, USVI
*For Plaintiff*

**James L. Hymes, III, Esq.**
St. Thomas, USVI
*For Defendant Marshall & Sterling*

**Garry Garten, Esq.**
St. Thomas, USVI
*For Defendant Underwriters of Lloyds*

**MEMORANDUM OPINION and ORDER**

**WILLOCKS, Presiding Judge**

¶1 **THIS MATTER** is before the Court on the Motion to Quash Service and Dismiss Complaint Against Certain Underwriters at Lloyds of London (hereinafter "Motion"), filed September 4, 2015. The Plaintiff's Opposition was filed on September 25, 2015, and a Reply was submitted on October 6, 2015.

## BACKGROUND

¶2    In 2012, the Plaintiff (hereinafter "Kitnurse") filed suit in District Court (hereinafter "*Kitnurse v. Nails Time*") against John Phuoc-le d/b/a Nails Time (hereinafter "Nails Time") after receiving injuries during a pedicure. *Certain Underwriters at Lloyds of London v. Le*, 2014 U.S. Dist. LEXIS 95988, \*1-2 (D.V.I. July 15, 2014). Nails Time had an insurance policy through Marshall and Sterling, which was underwritten by Lloyds of London (hereinafter "Lloyds"). *Id.* Kitnurse ultimately settled with Nails Time in a Consent Judgment for the amount of $1,000,000. (Compl. ¶ 9.) On May 7, 2014, Nails Time assigned Kitnurse all potential claims against Marshall and Sterling and Lloyds arising from Kitnurse's injuries in exchange for Kitnurse's agreement not to execute the Consent Judgment. (*Id. See* Exhibit 1 to Compl.)

¶3    However, during the pendency of *Kitnurse v. Nails Time*, Lloyds filed a declaratory action in District Court (hereinafter "*Lloyds v. Nails Time*") seeking a determination that the policy did not cover Kitnurse's injuries and that Lloyds was not obligated to defend and indemnify Nails Time. The District Court granted summary judgment in favor of Lloyds. *Le*, 2014 U.S. Dist. LEXIS 95988 at \*10-12. Nails Time subsequently appealed to the Third Circuit Court of Appeals, but the appeal was denied as moot because the Consent Judgment between Kitnurse and Nails Time "terminated any liability and responsibility Lloyds may have had to [Nails Time] in the *Kitnurse* case." *Certain Underwriters of Lloyds of London Subscribing to Policy No. CPS200601660 v. Le*, 629 Fed. App. 358, 361 (3d. Cir., Oct. 19, 2015).

¶4    The present case was filed in Superior Court before the Third Circuit issued its ruling. Proof of service for Marshall and Sterling was filed by Kitnurse on October 23, 2014, but service was not made on Lloyds. On March 24, 2015, the Court issued an order *sua sponte* seeking proof of service. Kitnurse then filed a motion for leave to serve out of time, which the Court granted on June 23, 2015. Despite

finding that Kitnurse had not demonstrated good cause for the delay, the Court exercised its discretion to grant an extension of time due to the preference that cases be heard on the merits.

¶5     According Lloyds, service should be quashed pursuant to Rule 4(m) of the Rules of Civil Procedure[1] because "[Kitnurse] waited nearly a year to serve the Complaint on Lloyds, far in excess of the 120 day requirement, even though it served the Complaint on [Marshall and Sterling] at least nine months [prior] and began discovery, knowing that Lloyds was not participating in the case and knowing that most of the same issues in this case were already being litigated with Lloyds in another case." (Mot. 1.)

¶6     Lloyds asserts that the delay in service "was a deliberate act to gain a litigation advantage to the prejudice of Lloyds in both this case and in [the *Lloyds v. Nails Time*] Third Circuit appeal of the same issues." (*Id.*) Though the Court granted Kitnurse an extension of time to serve Lloyds, it did so without knowing about the other case. (*Id.* at 2.) The extension of time was also granted despite a finding that Kitnurse had not demonstrated good cause. (*Id.*) Further, since Lloyds was not served with the motion for an extension of time, it did not have the opportunity to file an opposition. (*Id.*) Lloyds requests that the Court reconsider and vacate its order granting an extension of time pursuant to Rule 60(b)(2) or 60(b)(6) of the Rules of Civil Procedure because Kitnurse's failure to disclose all circumstances may be viewed as misrepresentation to the Court. (*Id.*)

¶7     Lloyds also argues that there is good cause to quash service because Kitnurse did not serve Lloyds within the 120 day timeframe articulated in Rule 4(m) and the issues, at the time this motion was filed, were already being litigated in District Court and on appeal. (*Id.* at 3.) At oral argument before the Third Circuit, Kitnurse's counsel was unable to articulate a reason why proceeding with the present matter would not moot the District Court case other than that she did not want the District Court's holdings to stand because it would undermine this case. (*Id.*) In Lloyds' view, Kitnurse "was

---

[1] Though this motion was filed prior to the adoption of the Virgin Islands Rules of Civil Procedure in March 2017, Rule 4(m) of the Federal Rules of Civil Procedure was subsequently adopted by the Virgin Islands and the rules are identical.

clearly hedging his bets to see what happens in the District Court/Appeal before involving Lloyds here." (*Id.* at 4.)

¶8    Lloyds goes on to allege prejudice in the form of costs and delays from having to litigate the same issues in the District Court and Third Circuit as well as in the Superior Court. (*Id.*) Additionally, Kitnurse is not prejudiced because he "freely chose to pursue the appeal and many if not all of the issues in the instant case will be decided by that appeal or made moot...." (*Id.*) "Lloyds did not initiate the appeal and had no reason to respond to this case as it was not timely served." (*Id.*)

¶9    In Opposition, Kitnurse asserts that service was sufficient because he was granted leave to serve out of time. (Opp'n 2.) Though Rule 12(b)(5) of the Rules of Civil Procedure allow a defendant to challenge service, Kitnurse states that Lloyds' challenge must fail because it cannot meet its burden of proof given because Kitnurse obtained the Court's permission to file out of time and the motion for an extension of time was supported by an affidavit indicating that the failure to serve Lloyds was a mistake on the part of new office employee. (*Id.* at 3.) Further, Kitnurse states that Lloyds had actual notice that the present suit had been filed because it was informed by an opening brief submitted to the Third Circuit and by the Complaint which was attached to the Joint Appendix filed before the Third Circuit. (*Id.* at 4.)

¶10    Kitnurse also argues that the Court should not reconsider its grant of an extension of time because Lloyds' challenge is not based on one of the usual grounds of reconsideration: 1) intervening change in controlling law; 2) availability of new evidence; or 3) need to correct a clear error of law or fact or to prevent manifest injustice. (*Id.* at 4, citing *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d. Cir. 1999)). Specifically, Kitnurse states that Lloyds had actual notice of this litigation and therefore cannot claim prejudice. (Opp'n at 5.)

¶11    Moreover, Kitnurse alleges that a comparison between this case and the District Court case "demonstrates that no issues here were ever actually litigated in the District Court matter...." (*Id.*) The

District Court case was a declaratory action regarding whether Policy Number CPS200601660 covered claims filed by Kitnurse against Nails Time. (*Id.*) Here, however, Kitnurse filed suit alleging breach of fiduciary duty for failure to underwrite the policy properly, failure to correct the policy so that it provided adequate coverage, and for fraudulent misrepresentation in selling an inadequate policy. (*Id.*at 5-6.) According to Kitnurse, "[t]o the extent Lloyds believes that any issues were previously litigated and were the subject of an [sic] final dispositive order, then it should be required to file the proper dispositive motion...." (*Id.* at 6.)

¶12     In the Reply, Lloyds asserts that Kitnurse missed the point of its argument regarding a reconsideration of the order granting an extension of time to serve Lloyds. (*See* Reply 1.) Kitnurse's motion was untimely, lacked good cause, and did not fully inform the Court of the circumstances of *Lloyds v. Nails Time.* (*Id.*) Additionally, Lloyds does not accept the explanation that the failure to serve was clerical error because "it should have been obvious to everyone that Lloyds was not participating in the case including discovery which was ongoing with the other co-defendant." (*Id.*)

¶13     Moreover, Lloyds argues that the copy of the Complaint that it was provided "clearly shows that the same coverage issues pled in this action are addressed in the District Court and the very coverage issues presented in that case are a precondition to even having the claims presented here." (*Id.* at 2.)

## STANDARD OF LAW

### 1) Reconsideration of extension of time pursuant to 60(b)(2) or (6)

¶14     A motion for reconsideration must be made within fourteen days after the entry of a ruling except as stated in Rules 59 and 60 of the Rules of Civil Procedure. In this case, Lloyds has invoked Rule 60(b)(2) and (b)(6). Under Rule 60(b)(2) , the Court may relieve Lloyds of the order granting an extension of time if there is "newly discovered evidence that could not, with reasonable diligence, have been discovered in time to move for a new trial under Rule 59(b)." V.I.R. Civ. P. 60(b)(2). "The

evidence must have been discovered after trial and the failure to learn must not have been caused by a lack of diligence." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d. Cir. 1983). Additionally, "[t]he evidence must be material to the issues involved, yet not merely cumulative or impeaching and must be of such a nature that it would probably change the outcome." *Id.*, citing *United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1973). In this case, the parties have not yet gone to trial in this matter, which makes consideration of Rule 60(b)(2) inappropriate. Accordingly, the Court will consider only Rule 60(b)(6).

¶15    Under that rule, "[t]he movant must show extraordinary and special circumstances justifying relief...." *Lucan Corp. v. Robert L. Merwin & Co.*, 2008 V.I. Supreme LEXIS 19, *7 (Sup. Ct. 2008). Moreover, "the preceding five categories [of Rule 60(b)] are considered mutually exclusive, and if the reason for which relief is sought fits within one of the five specific categories, even if the facts fail to meet the prerequisites for that relief, Rule 60(b)(6) is inapplicable." *Griffith v. Carpenter*, 2012 V.I. LEXIS 84, *5 (V.I. Super., June 7, 2012).

¶16    Another basis for relief is "fraud...misrepresentation, or misconduct by an opposing party," as per V.I.R. Civ. P. 60(b)(3), but Lloyds notably does not argue, cite, or otherwise invoke this principle despite alleging bad faith. Since the Court is only empowered to consider relief from an order "on motion and just terms," V.I.R. Civ. P. 60, the Court will not give 60(b)(3) its full consideration.

### 2) Quashing service

¶17    "If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." V.I.R. Civ. P. 4(m). A motion to quash service is proper when service of process is improper or inadequate. "Generally, where service of process is insufficient, courts allow a plaintiff the opportunity to re-serve the defendant, provided that service is not futile." *Daley-Jeffers v. Graham*, 69 V.I. 931 (Sup. Ct. 2018).

## DISCUSSION

### 1) Lloyds is not entitled to relief under Rule 60(b)(6) because there are no extraordinary circumstances warranting relief and Lloyds' motion should have been made pursuant to Rule 60(b)(3).

¶18    The Court may relieve Lloyds of the order granting Kitnurse an extension of time to serve if Lloyds has demonstrated extraordinary circumstances that warrant the order be vacated under Rule 60(b)(6). Lloyds alleges bad faith based on the fact that it was not timely served and that *Lloyds v. Nails Time* was being litigated in District Court.

¶19    With regard to the untimely service, the Court addressed the issue *sua sponte* and gave Kitnurse fourteen days to either submit proof of service or to show good cause why it should give an extension of time. Kitnurse subsequently filed a motion for an extension of time explaining that a legal secretary had inadvertently forgotten to prepare the Summons and Complaint intended for Lloyds and that Kitnurse had not acted in bad faith. The Court found that excuse inadequate but still decided to exercise its discretion and grant an extension of time in order to hear this case on its merits. The Court is therefore in agreement with Lloyds that Kitnurse should have realized much sooner that Lloyds had not been properly served, but the fact that the Court exercised discretion in granting an extension does not indicate an extraordinary circumstance for vacating an order.

¶20    As for bad faith, the Complaint discloses the fact that Kitnurse filed suit against Nails Time in 2012 and that the parties entered into a Consent Judgment. It does not disclose the fact that Lloyds filed its declaratory action, *Lloyds v. Nails Time*, during the pendency *Kitnurse v. Nails Time* to determine whether the insurance policy covered Kitnurse's claims. That information should have been disclosed, along with the outcome of the case or its current status. However, there is no hard evidence of misconduct in this matter. It is not necessarily bad faith for a party to "hedge their bets" by filing a subsequent suit and, assuming the affidavit regarding the inadvertent failure to serve is true, then there is no cause to believe that Kitnurse intended to exclude Lloyds for a litigation advantage. A lack of

response could simply indicate a default. Whether a duplicate case is pending or whether *res judicata* applies to claims already litigated are questions that can be resolved by an appropriate motion.

¶21    Regardless, relief cannot be granted under Rule 60(b)(6) if the reason for which relief is sought fits within another category of Rule 60(b). In this case, the Court believes the proper claim for relief is for Rule 60(b)(3), which allows for relief from an order due to fraud, misrepresentation, or misconduct by an opposing party. V.I.R. Civ. P. 60(b)(3). The Plaintiff's alleged bad faith, as articulated by Lloyds, would be misconduct and a misrepresentation to the Court. Since Lloyds requested relief only pursuant to Rules 60(b)(2) and (b)(6), neither of which is applicable in this case, the Court will deny Lloyds' request to reconsider the extension of time granted to the Plaintiff.

   2) **Service of process will not be quashed because the service was not futile, but the Plaintiff's contract claims against Lloyds are barred by *res judicata*.**

¶22    There is no dispute that Lloyds was not served within the 120-day period required by Rule 4(m). However, the Court exercised its discretion in granting Kitnurse the opportunity to serve Lloyds out of time, which is allowable under the rule as an alternative to dismissal. The question then becomes whether that service is futile. Beyond the Rule 60(b) argument discussed above, Lloyds asserts that the issues in this case have been litigated elsewhere. Though Lloyds does not expressly say it, this is an argument that *res judicata* applies. If so, then not only would service have been futile at the time the Court granted an extension of time, but the claims against Lloyds may be dismissed now.

¶23    *Res judicata* prevents re-litigation of a claim when "(1) the prior judgment was valid, final, and on the merits; (2) the parties in the subsequent action are identical to or in privity with the parties in the prior action; and (3) the claims in the subsequent action arise out of the same transaction or occurrence as the prior claims." *Stewart v. Virgin Islands Bd. of Land Use Appeals*, 66 V.I. 522, 532 (Sup. Ct. 2017) (adopting *res judicata* by *Banks* analysis) (citations omitted). The Virgin Islands has adopted the "transactional test" for determining when a claim arises out of the same transaction or

occurrence as prior claims. *Stewart*, 66 V.I. at 541. This means that subsequent claims will be barred

when they rely "on the same 'group of operative facts giving rise to the assertion of relief" as the earlier

claim or claims." *Id.*, citing *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998)

(internal brackets omitted). "Requiring a plaintiff to pursue all rights he or she may have against a

defendant that arise out of a single transaction or series of connected transactions promotes both

judicial economy and the public perception of the stability and finality of court decisions." *Stewart*, 66

V.I. at 542, citing *Beegan v. Schmidt*, 541 A.2d 642, 646 (Me. 1982).

¶24

> [T]he measure of a cause of action is the aggregate of connected operative facts that
> can be handled together conveniently for purposes of trial. A prior judgment bars a later
> suit arising out of the same aggregate of operative facts even though the second suit
> relies on a legal theory not advanced in the first case, seeks different relief than that
> sought in the first place, and involves evidence different from the evidence relevant to
> the first case.

*Stewart*, 66 V.I. at 543, citing *Connecticut Nat'l Bank v. Kendall*, 617 A.2d 544, 547 (Me. 1992). "In

applying this test, the court must pragmatically consider 'whether the connected operative facts are

related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether

their treatment as a unit conforms to the parties' expectations or business understandings or usage."

*Stewart*, 66 V.I. at 543, citing *River Park*, 703 N.E. 2d at 312.

¶25    In this case, the District Court granted summary judgment in favor of Lloyds that it was not

obligated to indemnify Nails Time, which is a valid and final judgment on the merits. The parties in

this action (the subsequent action) are also identical to or in privity with the parties in the declaratory

action because Nails Time assigned any claims it had against Lloyds to Kitnurse. Finally, the claims

against Lloyds in this action arise out of the same transaction or occurrence as the claims *Lloyds v.*

*Nails Time*. The purpose of the declaratory action was to determine whether Nails Time had insurance

coverage for Kitnurse's injury claims and whether Lloyds was obligated to defend and indemnify Nails

Time. The underlying transaction/occurrence is the issuance of the insurance policy and the aggregate

of operative facts includes those related to its issuance, such as whether Lloyds breached duties to Nails Time.

¶26     As such, the Plaintiff's claims against Lloyds in this case are barred by *res judicata* because they should have been brought as counterclaims in the declaratory judgment action. Pragmatically, the claims and issues outlined in the Complaint are related by origin to the question of whether Nails Time's insurance policy covered Kitnurse's injury. They also constitute a convenient trial unit and could have easily been resolved by the District Court.

¶27     Despite the fact that Kitnurse's contract claims against Lloyds are barred, the Court will not quash service because Kitnurse may still pursue its requested declaratory relief, meaning that service is not entirely futile and there may still be a reason for Lloyds to be involved in this litigation. If Lloyds feels that it is not a proper party to those claims or that they can be resolved by summary judgment, Lloyds may file the appropriate motion.

## CONCLUSION

¶28     In sum, the Court will not reconsider its decision to grant Kitnurse an extension of time to serve Lloyds pursuant to Rule 60(b)(2) and (b)(6) of the Rules of Civil Procedure because Lloyds has not articulated a sufficiently extraordinary circumstance warranting relief from the order and because Lloyds' argument that Kitnurse acted in bad faith must be assigned to Rule 60(b)(3) instead of 60(b)(6). The two are mutually exclusive but Lloyds did not argue the applicability of Rule 60(b)(3).

¶29     Additionally, the Court will not quash service for untimeliness because the Court exercised its discretion to grant an extension of time and therefore the service was not untimely or deficient. With regard to the *Lloyds v. Nails Time*, the Court finds that Nails Time neglected to bring countersuits for

breach of contract, breach of contractual duties, and misrepresentation and those claims--as assigned

to Kitnurse--are now barred by *res judicata*. Accordingly, it is hereby:

**ORDERED** that the Motion to Quash Service and Dismiss Complaint Against Certain

Underwriters at Lloyds of London is **GRANTED IN PART, DENIED IN PART**. Count II, Count

IV, Count VI, and Count VII of the Complaint are **DISMISSED** as against Certain Underwriters of

Lloyds Subscribing to Policy Number CPS200601660.

**DONE and so ORDERED this** _____ **day of May, 2020.**

**ATTEST:**
Tamara Charles                                                          HAROLD W.L. WILLOCKS
Clerk of the Court                                                   **Presiding Judge of the Superior Court**

By: _____
       Court Clerk ~~Supervisor~~ II

Dated: _____